UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAMIRO REYES, DOLORES REYES,
and DESIREE REYES,

            Plaintiffs,      CIV S-04-0428 FCD PAN PS

     v.

COUNTY OF SAN JOAQUIN, et      FINDINGS AND RECOMMENDATIONS
al.,

            Defendants.

—o0o—

On July 6, 2005, the court heard defendants' motion to dismiss plaintiffs' complaint and plaintiffs' opposition thereto. The court construed defendants' motion as one for summary judgment[1] and directed the parties to file supplemental briefing.

---

[1] On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

The court now issues these findings and recommendations.

Plaintiffs filed their amended complaint on May 21, 2004, alleging violations of their First, Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983, violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and state law causes of action for intentional infliction of emotional distress, defamation and false imprisonment.  The complaint challenges an order of temporary public conservatorship over the person and estate of plaintiff Dolores Reyes, now deceased,[2] who was the wife of plaintiff Ramiro Reyes and the mother of plaintiff Desiree Reyes.  Defendants include members of the San Joaquin Board of Supervisors (Marenco, Gutierrz, Mow, Sieglock, and Ornellas), the County Administrator (Lopez), the County Counsel (Dermody), Deputy County Counsel (Sparks), Human Services administrators (Chelli and Valadez), Human Services analysts (Winkler and Taylor), a Human Services physician (Silver), a Human Services social worker (Smith), a Public Health nurse (Giles), a Department of Aging administrator (Moore), and a private physician (Malak).[3]

---

[2] Dolores Reyes died April 22, 2005, at the age of 64.  See copy of Certificate of Death attached to Defendants' Notice filed June 10, 2005.  The certificate states her cause of death was Alzheimers Disease which began eight years previous.

[3] The following defendants were personally served with a copy of the summons and complaint and filed their motion to dismiss on September 24, 2004: County of San Joaquin, Dario Marenco (sued as Marengo), Steve Gutierrez, Victor Mow, Jack Sieglock (sued as Siglock), Leroy Ornellas, Manuel Lopez, Terrence Dermody (sued as Terrance), Sheryle Sparks (sued as Sheryl), Joseph Chelli, Robert Winkler, Marchell Smith (sued as Marcell), and Hilary Silver, M.D.  The following defendants joined in the motion to dismiss May 2005,

The court previously appointed Mr. Reyes guardian ad litem for both Mrs. Reyes and Desiree but on July 6, 2005, vacated the appointment for Desiree as she had reached 18 years of age, and held that the appointment for Mrs. Reyes was vacated upon her death.

Neither Mr. Reyes nor Desiree represent the estate of Mrs. Reyes and therefore each proceed in this action upon only their respective personal claims.  The court determined at the hearing that plaintiffs have standing to pursue only their claim that the temporary conservatorship of Mrs. Reyes violated their First and Fourteenth Amendment rights to familial association under 42 U.S.C. § 1983.

On a motion for summary judgment, the moving party must establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the opposing party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it affects the right to recover under applicable substantive law.  Id.  The moving party must submit evidence that establishes issues upon which the movant bears the burden of proof; if the movant does not bear the burden of proof on an issue, the movant need only point to the absence of

---

asserting they were "later served:"  Edward Allum, Linda Valadez, Marycorrine Giles (sued as Tammie), Diane Taylor, Alicia Baylor, Wendy Moore, Lindy Turner (sued as Linda), Merly Sumuraga (sued as M. Sumuraga), Taymour Malak, M.D.

evidence to support the opponent's burden. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 324 (1986). To avoid summary judgment on an issue upon which the opponent bears the burden of proof, the opponent must present affirmative evidence sufficiently probative such that a jury reasonably could decide the issue in favor of the opponent. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986). When the conduct alleged is implausible, stronger evidence than otherwise required must be presented to defeat summary judgment. <u>Id</u>. at 587.[4]

Fed. R. Civ. P. 56(e) provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The opponent need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. <u>Celotex</u>, 477 U.S. at 324. Rather, the questions are (1) whether the evidence could be submitted in admissible form and (2) "if reduced to admissible evidence" would it be sufficient to carry the party's burden at trial. <u>Id</u>., at

---

[4] The purpose of summary judgment is to "pierce the pleadings" and assess the proof in order to see whether there is a genuine need for trial. <u>Matsushita</u>, 475 U.S. at 587. To survive summary judgment, the opponent must do more than simply show there is some "metaphysical doubt" as to the material facts. <u>Id</u>. at 586. Where the record taken as a whole could not lead a rational trier of fact to find in the opponent's favor, there is no genuine issue for trial. <u>Id</u>. at 587. While on summary judgment, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; if the factual context renders plaintiff's claims implausible, plaintiff must come forward with more persuasive evidence than would otherwise be necessary. <u>Id</u>.

327. A verified complaint based on personal knowledge setting forth specific facts admissible in evidence is treated as an affidavit. Schroeder v. McDonald, 55 F.3d 454 (9th Cir. 1995); McElyea v. Babbitt, 833 F.2d 196 (9th Cir. 1987). A verified motion based on personal knowledge in opposition to a summary judgment motion setting forth facts that would be admissible in evidence also functions as an affidavit. Johnson v. Meltzer, 134 F.,3d 1393 (9th Cir. 1998); Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004). Defects in opposing affidavits may be waived if no motion to strike or other objection is made. Scharf v. United States Attorney General, 597 F.2d 1240 (9th Cir. 1979).

To make out a claim under 42 U.S.C. § 1983, plaintiffs must demonstrate deprivation of a federal constitutional or statutory right under color of law. Dang Vang v. Toyed, 944 F.2d 476, 479 (9th Cir. 1991); Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). Plaintiffs claim defendants' imposition of a temporary public conservatorship over the person and estate of Mrs. Reyes was accomplished "fraudulently [and] with malicious intent," and violated plaintiffs' First and Fourteenth Amendment rights "not to be denied liberty, including family relations, without due process of the law." Complaint, ¶¶ 6, 7.

The right to familial association is a recognized liberty interest under the First and Fourteenth Amendments protected from state interference without due process of law. The right extends not only to the reciprocal rights of parents and their minor

children (see, e.g., Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985), but to the rights of parents toward their adult children (see, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001), Strandberg v. City of Helena, 791 F.2d 744 (9th Cir. 1986), and Curnow by and Through Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991)), the rights of adult children toward their parents (Curnow, supra, 952 F. 2d at 325, Smith v. City of Fontana, 818 F.2d 1411, 1419 (9th Cir. 1987), overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F. 3d 1037 (9th Cir. 1999)), and the rights of a spouse (Byrd v. Guess, 137 F.3d 1126, 1134 (9th Cir. 1998).[5]

"To recover for a violation under § 1983 for interference with familial rights, a plaintiff must show that the defendant acted with deliberate indifferen[ce] to these rights," Venerable v. City of Sacramento, 185 F. Supp. 2d 1128, 1131 (E. D. Cal. 2002), citing Byrd v. Guess, 137 F.3d 1126, 1134 (9th Cir. 1998) (excessive force), or the government's actions constitute "unwarranted interference" with an individual's rights to

---

[5] "It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983. This constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents. Moreover, the First Amendment protects those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (citations and internal quotations omitted).

familial association, <u>Lee v. City of Los Angeles</u>, supra, 250 F.3d at 686.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." <u>Kennedy v. City of Ridgefield</u>, 411 F.3d 1134, 1143 (9th Cir. 2005) (citations and internal quotations omitted). "Unwarranted interference" includes governmental actions that are vexatious and unnecessary, <u>Nixon v. Fitzgerald</u>, 457 U.S. 731, 781-782 (1982), harassing, unfounded or unreasonable, <u>United States v. Dionisio</u>, 410 U.S. 19, 45, (1973), and arbitrary, discriminatory, or demonstrably irrelevant, <u>Carter v. Carter Coal Co.</u>, 298 U.S. 238, 332 (1936). Due process requires that the challenged law, policy or goal "not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." <u>Nebbia v. People of New York</u>, 291 U.S. 502, 525 (1934).

The following facts are undisputed. Mrs. Reyes was diagnosed with Alzheimer's disease in the mid-1990s, rendering her by 2002 nonverbal, nonresponsive, subject to seizures and unable to care for herself yet physically mobile. Mrs. Reyes resided with her son Paul Reyes, who was the designated payee for Mrs. Reyes' public benefits. Mrs. Reyes was cared for by family members, including Paul, Desiree and Mr. Reyes although the couple was separated.

In 2002, Mr. Reyes requested the assistance of the San

Joaquin County Adult Protective Services (APS) to obtain residential care for Mrs. Reyes in a secure skilled nursing facility.[6] APS had difficulty identifying appropriate local facilities that met Mrs. Reyes' needs[7] but Mr. Reyes visited at least two facilities that he found unsatisfactory.[8]

In February 2003, Mrs. Reyes was hospitalized at St. Joseph's Hospital following a seizure.

In an effort to obtain long-term placement at nearby Crestwood Manor,[9] which defendants assert "require all persons they accept to be conserved, i.e., have a conservator appointed

---

[6] Plaintiff's Supplemental Brief (Mr. Reyes' July 13, 2005 Statement, p. 1, and (b) Plaintiff's Objection to Establishing a Conservatorship, p. 1, lines 27-28); and Giles Decl., ¶ 3F.

[7] MaryCorinne Giles, who was the APS investigator assigned to Mrs. Reyes, states that "[b]ecause Ms. Reyes was only on SSI assistance, it was difficult to place her in privately owned facilities . . . . There are only a few locked facilities in the area.  I worked for six months on trying to find[] a suitable placement for Ms. Reyes, including looking in San Joaquin County, up to Sacramento, out to the Bay Area, and down to Fresno, but I was not able to place her."  Giles Decl., ¶ 3I.

[8] The parties dispute the reasons why these potential placements failed.  Mr. Reyes states that neither facility provided bed railings (but recommended sedation as an alternative) (Mr. Reye's Statement, at p. 2) while defendants state Mr. Reyes was demanding and difficult (Giles Decl., ¶ 3L). The parties also dispute the timing of these visits.  Defendants assert both visits took place after Mrs. Reyes' February 2003 hospitalization, and with the assistance of St. Joseph Hospital.  Giles Decl., ¶¶ 3K, L.  Mr. Reyes asserts he visited one facility prior to Mrs. Reyes' hospitalization, and one thereafter, both upon the recommendation of APS.  Mr. Reye's Statement, at pp. 1-2)

[9] MaryCorinne Giles states, "The only other viable option was Crestwood Manor."  Giles Decl., ¶ 3M.  Crestwood Manor Stockton is a residential skilled nursing facility owned and operated by Behavioral Health, Inc.  See http://www.crestwoodmanor.com/stockton.html.  Its services include "long-term treatment and services to people with a primary medical diagnosis and an underlying behavioral diagnosis–for example Alzheimer's or disease-related dementia."  Id.

for them" (Giles Decl., ¶ 3M), APS implemented conservatorship proceedings. Defendants state without opposition that "[b]oth Mr. Reyes and his son expressly agreed to the referral and to seeking the conservatorship." Giles Decl., ¶ 3N.

On February 19, 2003, the San Joaquin County Superior Court appointed the Public Conservator as temporary conservator of Mrs. Reyes.[10] The appointment was based upon the affidavit of Dr. Taymour Malak, M.D., Mrs. Reyes' physician.[11] The superior court stated (Feb. 19. 2003, Order Appointing Temporary Conservator, p. 1):

> Upon review, the Court finds that said affidavit demonstrates the necessity for a temporary conservatorship investigation for the County of San Joaquin, as it appears that said individual is gravely disabled within the meaning of Section 5008(h) of the Welfare and Institutions Code as the result of mental disorder and is unable to accept treatment voluntarily.

California Welfare and Institutions Code section 5008(h) provides that "gravely disabled" means, "A condition in which a person, as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." Cal. Welf. & Inst. Code § 5008(h)(1)(A). The supporting affidavit of Dr. Malak, dated February 2, 2003, reflected an examination date of December 12, 2002, and states

---

[10] The appointment was for a thirty-day period commencing upon the Conservator's oath. The order appointed the county public defender to represent Mrs. Reyes in further proceedings for permanent conservatorship.

[11] February 19, 2003, Order of the San Joaquin Superior Court Appointing Temporary Conservator, p. 1. Exhibit 1 to Defendants' Request for Judicial Notice, p. 7.

9

that Mrs. Reyes was gravely disabled pursuant to section 5008(h) due to "Alzheimer's disease, dementia and anxiety."[12]

Also on February 19, 2003, following appointment as temporary conservator, the Public Conservator filed a petition for permanent conservatorship. The petition states that Mrs. Reyes was evaluated by Dr. Hilary Silver, M.D., who "has determined the proposed conservatee to be gravely disabled as a result of a mental disorder." The petition also states that "[t]he proposed conservatee is now at the San Joaquin County Mental Health Center. . ."[13]

Plaintiffs maintain–and defendants do not disagree–that both statements are false. By all accounts, Mrs. Reyes was never examined by Dr. Silver, a psychiatrist, and never resided at the San Joaquin County Mental Health Center. These statements are at the heart of plaintiffs' litigation.[14]

The petition for permanent conservatorship also included (1) the February 2, 2003, Declaration of Dr. Malak, (2) the appointment of temporary conservatorship, and (3) the order

---

[12] Declaration of Physician or Psychologist That Conservatee is Gravely Disabled, p. 1.  Exhibit 1 to Defendants' Request for Judicial Notice, p. 9.

[13] February 19, 2003, Petition for Appointment of Conservator, pp. 1-2, Exhibit 1 to Defendants' Request for Judicial Notice, pp. 1-2.

[14] At the hearing plaintiffs also challenged document citations to 1800 N. California Street and 2800 N. California Street. Defendants confirmed at the hearing and subsequently that these addresses refer respectively to St. Joseph's Medical Center and the office of Dr. Taymour Malak. Defendants' Supplemental Brief, at p. 5, n. 5 and pertinent text. The addresses are reflected accurately in the papers submitted to this court.

appointing temporary conservatorship.[15]  Defendants' Request for Judicial Notice, Exhibit 1, p. 9.

In anticipation of the hearing on permanent conservatorship, defendants "served" papers upon Mrs. Reyes.  Mr. Reyes' Statement, at p. 2.  "They just threw the papers down at her" and these papers "contained [the] fraudulent affidavi[t]s."  Id.

In response, Mr. Reyes filed with the superior court an "Objection to Establishing of a Conservatorship" wherein he stated in full (March 11, 2003, Objection, at pp. 1-2, Attachment to Mr. Reyes' Statement):

> Objector, Ramiro Reyes, is the husband of the proposed conservatee, Dolores Reyes.
> Objector contends that there is no need for a conservatorship.
> The proposed conservatee suffers from Alzheimer's Disease and has so for several years.  Objector, along with his son, Paul Reyes, has provided her all necessary care.  Objector has tried to obtain a full care facility for the proposed conservatee, however, none is available in San Joaquin County that meets her needs.  Objector fears that by appointing the County as the conservator to which he strongly objects, the County will only put the conservatee on medicines to completely sedate her so that she requires no care and would not enjoy any quality of her life as she

---

[15]  The following reports–set forth in a separate exhibit before this court–may also have been included in the petition for permanent conservatorship.  See Defendants' Request for Judicial Notice, Exhibit 3.  An unsigned investigative report dated March 12, 2003, recommends that Mrs. Reyes be found gravely disabled due to mental disorder.  Id., at p. 1.  An undated and unsigned report recommends that Mr. Reyes rather than the Public Conservator be appointed permanent conservator based on the following: (1) a supporting statement from Dr. Malak obtained March 12 providing, "I think [Mr. Reyes] can [take care of Mrs. Reyes], he did before.  So I think for the most part he took good care of her at home.  Appeared reasonably taken care of, no decubitus ulcers or signs;" and (2) Mr. Reyes arranged for three family members to care for Mrs. Reyes through the "In Home Support Services" program and stated his intent to be appointed conservator.  Id., at pp. 5-6.

11

> is currently able to despite her disease.
> 
> Recent newspaper coverage about the San Joaquin conservator office increases objector's strong feelings that the County of San Joaquin should not be appointed a conservator, and if any conservator is to be appointed, it should [be] the undersigned, Ramiro Reyes.
> 
> The proposed conservatee has no assets that need any administration. To the extent a power of attorney is needed, the proposed conservatee has provided the undersigned with a power of attorney.

On March 21, 2003 (order filed April 1), the superior court terminated the temporary conservatorship and dismissed the petition for permanent conservatorship. The order provides no rationale but the attached minute order states that Mr. Reyes was questioned and the "matter dropped." Defendants aver, "The County dropped the conservatorship proceedings" when it became clear the family "changed their minds about this whole placement process." Defendants' Supplemental Memorandum, at p. 3. Mr. Reyes states that, upon questioning by the judge about Mrs. Reyes' current placement (a hospital, not a mental facility) and the absence of a testifying psychiatrist, Ms. Sheryle Sparks, Deputy County Counsel, "asked that the case be dismissed." Mr. Reyes' Statement, at pp. 2-3.

Mrs. Reyes was cared for at St. Joseph's Hospital from February 10 to March 23, 2003,[16] and therefore throughout the period of her temporary conservatorship (February 19 to March 21). She died April 22, 2005, at the Hospice House of San

---

[16] Statement of Desiree Reyes at p. 1, Mr. Reyes' Statement, Cover Sheet.

Joaquin.[17]

Mrs. Reyes' temporary conservatorship reflects the relevant time period for assessing the alleged violation of plaintiffs' rights to familial association. Only during this period was the county authorized to make medical and other decisions for Mrs. Reyes or deny plaintiffs access to her.

Plaintiffs do not assert, however, they were denied access to Mrs. Reyes or input in her care, nor even that they were opposed to the temporary conservatorship.

Plaintiffs' principal complaint is that defendants acted with malice in relying upon, under penalty of perjury, "fraudulent affidavits" stating that Mrs. Reyes resided at the county mental health facility and had been examined by psychiatrist Dr. Silver. However, these admittedly incorrect statements were filed in support of the petition for permanent conservatorship, not temporary conservatorship. The superior court did not rely on these statements. Moreover, plaintiffs' written opposition to the petition for permanent conservatorship did not even challenge these statements, focusing instead on the possibility of unnecessary sedation.

Plaintiffs also challenge the assessment, made pursuant to the petitions for both temporary and permanent conservatorship, that plaintiff was gravely disabled as a result

---

[17] Dolores Reyes died at the Hospice House of San Joaquin (Certificate of Death attached to Defendants' Notice filed June 10, 2005), a nonprofit residential care facility that is "Medicare/Medi-Cal certified" (see www.hospicesj.org/about.asp).

of a "mental disorder."  Plaintiffs argue that Alzheimer's disease is not a mental disorder and to so characterize it has falsely and maliciously interfered with the family's privacy and due process rights.  However, this designation is consistent with (1) Dr. Malak's assessment Mrs. Reyes was "gravely disabled" as a result of "Alzheimer's disease, dementia and anxiety," and (2) the American Psychiatric Association's inclusion of "Dementia of the Alzheimer's Type" in its <u>Diagnostic and Statistical Manual of Psychiatric Disorders</u>.[18]  Moreover, the characterization of plaintiff's uncontroverted dementia as a "mental disorder" was essential to the initiation of the temporary conservatorship proceedings to which plaintiffs acceded.  Dr. Malak made his assessment on a form that defined "gravely disabled" "within the meaning of Welfare and Institutions Code section 5008(h) as a result of a mental disorder."  It is only in tandem with the false statements that plaintiff was examined by Dr. Silver and resided at the county mental health facility that the diagnosis "mental disorder" took on an inappropriate meaning.

I find that plaintiffs have failed to meet their burden of demonstrating defendants acted with deliberate indifference or unwarranted interference in obtaining and maintaining temporary public conservatorship of Mrs. Reyes.  Plaintiffs have failed to demonstrate defendants acted vexatiously or arbitrarily or

---

[18] Diagnostic and Statistical Manual of Psychiatric Disorders (4th Ed. 1994), at pp. 139-143.

14

disregarded a known harmful consequence of their actions. Rather, in light of all the circumstances, defendants actions were reasonable.

Accordingly, I recommend that defendants' motion for summary judgment be granted.

These findings and recommendations are submitted to the Honorable Frank C. Damrell, Jr., the United States District Judge assigned to this case.  28 U.S.C. § 636(b)(l).  Written objections may be filed within ten days after being served with these findings and recommendations.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 31, 2005.

      /s/ Peter A. Nowinski
PETER A. NOWINSKI
Magistrate Judge

15